Filed 1/17/14  Klahn v. Kimco Realty Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DANIEL P. KLAHN, SR., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> KIMCO REALTY CORPORATION et al., <br><br> Defendants and Respondents. | D063214 <br><br><br> (Super. Ct. No. 37-2012-00053737-<br>CU-BT-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Thomas P. Nugent, Judge.  Affirmed.

Daniel P. Klahn, Sr., in propria persona, for the Plaintiff and Appellant.

Blackmar, Principe & Schmelter and Gerry C. Schmelter, Matthew A. Law for Defendants and Respondents.

Daniel P. Klahn, Sr. appeals from a judgment of dismissal after the trial court sustained a demurrer to his complaint without leave to amend.  Respondents Kimco

Realty Corporation (Kimco), a management company for El Camino North Shopping Center in Oceanside, California and Louise Chappins (collectively respondents), the shopping center's property manager, demurrered on grounds Klahn lacked standing to sue because the real party in interest was a defunct limited liability corporation. Respondents further argued Klahn did not allege sufficient facts to state causes of action for intentional interference with contract, negligence based on a contractual breach, intentional infliction of emotional distress, and unfair business practices (Bus. & Prof. Code, § 17200 et seq.).

On appeal, Klahn does not address the merits of the trial court's judgment or cogently explain why his complaint suffices to state proper causes of action. Nor does Klahn comply with the California Rules of Court applicable to the substance and form of his briefs. We conclude Klahn has abandoned his appellate contentions, to the extent they are ascertainable, and he has not overcome the legal presumption in favor of the judgment's correctness. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2012, Klahn filed a verified complaint in his capacity as "President and 100 [percent] shareholder for WG Companies, LLC (now disbanded) which owned a Quiznos Franchise." Klahn alleged causes of action for tortious interference with contract; negligence; res ipsa loquitur, intentional infliction of emotional distress and unfair business practice. Klahn alleged as to all causes of action that Chappins refused his requests to install various promotional materials including a banner, helium balloons and directional signs on his premises to advertise his Quiznos franchise's July 2010 grand

2

opening. Klahn alleged Chappins yelled at the individuals Klahn had hired to direct the public to his restaurant that day.

Klahn further alleged that from July 2010 to December 2010, Chappins "engaged in a pattern of harassment towards [him] by failing to provide any reasonable level of management service, denying attempts for [him] to promote, advertise and operate his business . . . [and Chappins] destroyed multiple signs, banners and engaged in behavior inconsistent with [Kimco's] mission statement." He added, "Ms. Chappins continually told me the City did not allow such flags and banners." According to the complaint, Quiznos' corporate management required Klahn to purchase promotional materials that Chappins and the shopping center ultimately barred him from putting up on his business. Klahn alleged he lost sales due to Chappins's conduct, and therefore closed his franchise in approximately December 2010. Klahn also alleged that Kimco, as Chappins's employer, was vicariously liable for her conduct.

Klahn attached four documents to his complaint: (1) Klahn's lease application submitted to Kimco; (2) an executed "Acknowledgement, Agreement and Release Form" of the franchise agreement between Klahn and QFA Royalties, LLC (some capitalization omitted); (3) a permit for provision of music at the grand opening that Klahn signed as President of WG Companies, LLC, dba Quiznos, and entered into with PK II El Camino North, LP, which owns El Camino North; and (4) Klahn's September 2010 letter of complaint that he sent to Kimco's vice president regarding Chappins's uncooperative conduct.

3

Respondents demurred to the complaint on grounds previously set forth, and attached to their demurrer a request for judicial notice of a document showing that at least by June 2012, WG Companies, LLC's status as a California business entity had been canceled.

Klahn opposed the demurrer, claiming he had alleged sufficient facts in the complaint to support each cause of action. He claimed he had standing to prosecute the lawsuit because WG Companies, LLC was not a proper party to the rental agreement, as he had signed all of the documents using his name. Specifically, Klahn argued he did not "seek to recover on behalf of [WG Companies, LLC;] all the investment, documentation and ownership is in [his name] and personally guaranteed by [him] and was never correctly executed in the entity name of WG Companies, LLC." Klahn asserted that the basis of his negligence claim was Chappins's "distain [*sic*] for him" and Kimco's unresponsiveness to his complaints. He added that his volume of sales declined in part because he had spent too much time trying to counter Chappins's interference instead of building his business. Klahn based his emotional distress claim on the "hours spent trying to resolve the harassment [and] failure by Kimco to respond and every other intentional act by Chappins and Kimco." With no citation to the record or legal authority, he assertedly based his negligence claim on "an implied duty through landlord-tenant relationship and not obligations under a contract between the parties in this complaint." Klahn did not explain in his opposition whether or how his complaint could be amended.

The court granted respondents' request for judicial notice that WG Companies, LLC was defunct and sustained the demurrer without leave to amend on the grounds

4

stated above. It entered judgment in favor of respondents. Klahn filed the present appeal.

## DISCUSSION

### I. *Forfeiture of Appellate Contentions*

We first address respondents' contention Klahn forfeited his appellate claims by failing to support them with record citations, and by not adequately addressing his standing to pursue this litigation in light of the fact that the defunct WG Companies, LLC, and not Klahn, is the real party in interest.

The general rules of appellate practice apply to our review of a judgment following a demurrer that has been sustained without leave to amend. (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) The burden is on the appellant to follow the California Rules of Court by (among other things) supporting all appellate arguments with legal analysis and appropriate citations to the material facts in the record (Cal. Rules of Court, rule 8.204(a)(1)(C)), and show exactly how the error caused a miscarriage of justice (Cal. Rules of Court, rule 8.204(a)(2)(C); Cal. Const., art. VI, § 13). If the appellant fails to comply with these rules, the contentions are forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B) & (e); *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239-1240.)

The discussion portion of Klahn's brief is divided into three sections. The first section purports to address the standard of review, but Klahn does not discuss that topic. Rather, he merely asserts he had standing to bring the lawsuit, and adds two case citations, without explaining the proposition for which he cites them. The second section

5

is titled, "The Elements of The Action," but Klahn does not set forth the elements of any cause of action pleaded in his complaint. He instead states the legal principle that the same act may constitute a breach of contract and a tort and the plaintiff may elect to sue in tort; but he fails to apply that principle to the facts here. In that section, he also makes the bald assertion: "The emotional and physical injuries sustained were directly caused by the Tortfeasor (Respondents) and were a dereliction of duty owed to [Klahn] as a tenant in the center. During the period of June 1, 2010[,] to December 20, 2010[,] Klahn's weekly sales fell by approximately 63 [percent] with the loss of advertising and visibility within the center and was a proximate cause of a substantial decline of the weekly sales." He follows this assertion with a string of case citations, but no explanation of the cases or their relevance here. In the third section, Klahn contends the trial judge "overstepped his authority by requesting [Klahn] be removed from the motion hearing [telephonic] call without cause."[1]

As a foundational matter, Klahn's opening brief, like his complaint, fails to properly identify the contractual relationship, if any, between Klahn and WG Companies, LLC on the one hand, and Kimco and PK II El Camino North, LP on the other. That

---

[1] Klahn's failure to include a copy of the transcript of the hearing with the record on appeal inhibits our ability to evaluate this claim, which we therefore regard as forfeited. The appellant's burden on appeal requires "more than simply stating a bare assertion that the judgment, or part of it, is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶ 8:17.1, pp. 8-5 to 8-6, citing *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.)

6

information is necessary for purposes of ascertaining the existence of privity of contract between Klahn and respondents, and tort liability on the part of respondents. Specifically, Klahn claims in his opening brief that the franchise agreement required him to post certain promotional materials at his business, and he seems to identify that franchise agreement as the applicable contract; however, it is unclear how respondents' conduct can fairly be construed as interference with Klahn's franchise agreement, as opposed to interference, if at all, with his separate lease agreement.

Respondents purport to clarify the matter in their reply brief: "The facts of this case are hard to discern from the record presented to this Court. However, for clarity's sake, they are as follows. PK II El Camino North LP is the owner and landlord of a shopping center in Oceanside, California. In or about 2010, PK II El Camino North LP entered into a lease agreement with Restaurant Realty LLC to lease a portion of the shopping center for a Quizno's franchise. Somehow, WG Companies[,] LLC ended up in possession of the leased premises as owner and operator of the Quizno's franchise, and vacated the premises in January 2011." Respondents also point out the deficiency in Klahn's pleadings: "As specifically alleged by [Klahn], the parties to the relationship that are fundamentally at issue in his complaint are WG Companies[,] LLC, Restaurant Realty[,] LLC and PK II El Camino North LP. . . . None of these entities is a party to this action. Instead, [Klahn] inexplicably sued [Kimco], a completely distinct legal entity, and Chappins, its employee."

Because Klahn's opening brief does not contain proper citations to the appellate record to support his assertions of fact, procedure and law, we consider his appellate

7

contentions forfeited.[2] (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247; *City of Lincoln v. Barringer*, *supra*, 102 Cal.App.4th at p. 1239; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 [if appellant's brief does not contain legal argument with citation of authorities on points made, court need not furnish argument or search record for support for appellant's contentions but may treat them as forfeited without addressing them].)

Although Klahn is self-represented, we note that lack of legal counsel does not entitle an appellant to special treatment. (*Harding v. Collazo* (1986) 177 Cal.App.3d 1044, 1055; *Doran v. Dreyer* (1956) 143 Cal.App.2d 289, 290.) A self-represented litigant is held to the same restrictive rules of procedure as an attorney. (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638-639.) "A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985.)

In light of the confusing allegations in the complaint regarding the threshold questions of which is the applicable contract and who are the proper respondents in this case, we conclude the trial court did not err in sustaining the demurrer. Moreover, as we discuss below, granting Klahn leave to amend his complaint on this point would not cure other defects in his complaint.

---

[2] Klahn uses a citation system that apparently refers to the superior court record; but it does not correspond to the appellate record. He did not file a reply brief.

## II. *Klahn's Causes of Action Also Fail on the Merits*

Even evaluating Klahn's causes of action on the merits, they fail. A fundamental rule of appellate review is that an appealed judgment is presumed to be correct and "error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The appellant has the burden of overcoming the presumption of correctness. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

### A. *Derivative Lawsuits*

A threshold question in this case concerns who is the real party in interest and therefore entitled to recover in this lawsuit. In *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, this court reiterated the applicable law regarding shareholder actions: "Shareholders may bring two types of actions, 'a *direct* action filed by the shareholder individually (or on behalf of a *class* of shareholders to which he or she belongs) for injury to his or her interest *as a shareholder*,' or a '*derivative* action filed on *behalf of the corporation* for *injury to the corporation* for which it has failed or refused to sue.' [Citation.] 'The two actions are mutually exclusive: i.e., the right of action and recovery belongs either to the *shareholders* (direct action) or to the *corporation* (derivative action).' [Citation.] When the claim is derivative, the 'shareholder is merely a nominal plaintiff . . . . Even though the corporation is joined as a nominal defendant . . . , it is the real party in interest to which any recovery usually belongs.' " (*Id.* at pp. 312-313.) We also repeated the criteria for determining whether a lawsuit is a derivative action: "An action is derivative if ' "the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance of distribution among

9

individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." ' " (*Id.* at p. 313.)

Here, the complaint alleges injuries to WG Companies, LLC, which is defunct. Moreover, the contract to provide music for the franchise's grand opening states the contracting parties were Quiznos and PK II El Camino North, LP. Klahn signed the contract in his capacity of President of WG Companies, LLC, dba Quiznos. It therefore follows that the defunct WG Companies, LLC, and not Klahn, is the real party in interest, and the one to whom any recovery would belong.

B. *Intentional Interference with Contract Claim*

To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148.)

Even if Klahn's evidence is accepted and every inference is indulged in the light most favorable to him as the plaintiff, his complaint still lacks the essential elements of this particular claim because there is no allegation either directly or implicitly suggesting respondents acted with the intent to induce a breach of Klahn's contracts. To the contrary, Klahn alleges in his complaint that respondents, in opposing his promotional signs, had refused to grant him any exception under the master lease. He also alleged that Chappins expressed that Klahn's signs violated municipal requirements. The only

10

reasonable inference to draw from those claims is that respondents' conduct was guided by considerations unrelated to any intent to induce a breach of Klahn's contracts. Moreover, Klahn's allegations are insufficient to show Chappins knew that her actions were substantially certain to result in interference with Klahn's contract with a third party. The court did not err by sustaining the demurrer as to this cause of action.

C. *Negligence Cause of Action*

Klahn contends he has alleged sufficient facts to make out a case for tort damages as opposed to contractual damages. However, he has not properly alleged which duty respondents owed him or how they breached it. The California Supreme Court has described "several instances where tort damages were permitted in contract cases. 'Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury [citation]; for breach of the covenant of good faith and fair dealing in insurance contracts [citation]; for wrongful discharge in violation of fundamental public policy [citation]; or where the contract was fraudulently induced. . . .' [Citation.] '[I]n each of these cases, the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm.' " (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 989-990.)

Here, Klahn has not set forth allegations establishing any of these possible theories on which tort damages could be recovered. Accordingly, the court did not err in sustaining the demurrer as to this cause of action.

11

*D. Res Ipsa Loquitur*

In his complaint, Klahn purported to plead a cause of action for res ipsa loquitur, but he does not address it in his opening brief.  We deem the matter abandoned.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)  In any event, res ipsa loquitur is "a rule of evidence allowing an inference of negligence from proven facts.  [Citations.]  It is based on a theory of 'probability' where there is no direct evidence of defendant's conduct, [citations], permitting a common sense inference of negligence from the happening of the accident.  [Citations.]  The rule thus assists plaintiffs in negligence cases in regard to the production of evidence.  [¶]  The applicability of the doctrine depends on whether it can be said the accident was probably the result of negligence by someone and defendant was probably the person who was responsible.  [Citations.]  In the absence of such probabilities, there is no basis for an inference of negligence serving to take the place of evidence of some specific negligent act or omission." (*Gicking v. Kimberlin* (1985) 170 Cal.App.3d 73, 75.)  Here, in light of the fact Klahn specifically identifies respondents as causing his claimed harm, he has provided no basis for application of the doctrine of res ipsa loquitur.

E.  *Cause of Action for Intentional Infliction of Emotional Distress*

In its substantive entirety, Klahn's allegation of intentional infliction of emotional distress in his complaint states:  "Chappins abused her position which gave her the power to damage [his] interest; she acted intentionally and unreasonably with the recognition

that the acts are likely to result in illness through mental stress and through a special relationship of Landlord/Tenant. . . . The defendant acted with intent to inflict injury and the realization that the injury was substantially certain to result from her conduct. . . . This defendant directed the acts at [Klahn] by not acting in the same manner towards other tenants in the same center. Several exception [*sic*] were granted, but [Klahn] was not given or offered any such exceptions and instead was harassed and acted upon in an outrageous and intended manner."

The elements of a prima facie case for the tort of intentional infliction of emotional distress were summarized in *Cervantez v. J. C. Penny Co.* (1979) 24 Cal.3d 579, 593: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citations.] 'Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged.' [Citations.] Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." The tort calls for intentional, or at least reckless conduct— conduct intended to inflict injury or engaged in with the realization that injury will result. (See *Spackman v. Good* (1966) 245 Cal.App.2d 518, 530; *Davidson v. City of Westminster* (1982) 32 Cal.3d 197, 209.) Klahn has not alleged any conduct by respondents that was so outrageous as to satisfy the elements of a cause of action for

13

emotional distress; therefore, the court did not err by sustaining the demurrer on this cause of action.

F. *Unfair Business Practices Cause of Action*

In order to state a claim for unfair business practices, Klahn must allege that respondents committed a business act or practice that is fraudulent, unlawful, or unfair. (See *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 986.) In light of our conclusion Klahn's complaint failed to allege sufficient facts to support his other causes of action, his derivative claim of unfair business practices necessarily fails because he has not pleaded any separate unfair, fraudulent, or unlawful practice. (*Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1147.)

III. *Klahn Failed to Prove an Ability to Amend his Complaint*

In considering whether Klahn has carried the burden of showing that he can amend his complaint to cure any defects, we note that he must show "in what manner" he can amend his complaint "and how that amendment will change the legal effect" of his pleading. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) "[L]eave to amend should not be granted where . . . amendment would be futile." (*Vaillette v. Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 685.) On appeal, Klahn makes no argument regarding how he can amend his complaint. The closest he comes to doing so is in the conclusion section of his opening brief: "[I]f not for the fact that Defense Counsel submitting incorrect and biased evidence that Klahn did not have standing to file this claim because he represented a limited liability corporation, when in fact, his LLC was never a party to the lease or tenancy of the space in the Shopping Center, El Camino North, and the judge

14

accepting this evidence without giving the appellant opportunity to argue and present facts to the contrary, [Klahn] may have argued successfully and won his right to a trial by jury or at the very least given the opportunity [*sic*] to amend his claim. The judge should have considered the written opposition to the demurrer or given [Klahn] a chance to amend complaint or argue orally his opposition."

Those conclusory remarks fail to satisfy Klahn's burden to show he can amend his complaint to state a viable cause of action. Moreover, because we have concluded that his causes of action fail as a matter of law, it follows that the trial court did not err in declining to grant him leave to amend his complaint. (Accord, *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1615.)

## DISPOSITION

The judgment is affirmed. Respondents Kimco Realty Corporation and Louise Chappins are awarded costs on appeal.

O'ROURKE, J.

WE CONCUR:

NARES, Acting P. J.

McINTYRE, J.

15